**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRI THANH NGUYEN, | : | CIVIL ACTION NO. **3:CV-10-1866** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| FRANKLIN COUNTY and SHERIFF | : | |
| DANE ANTHONY, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On September 7, 2010, Plaintiff, Tri Thanh Nguyen, while an inmate at the Franklin

County Prison, Chambersburg, Pennsylvania ("FCP"), filed, *pro se*, a civil rights action with this

Court, pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1).  Plaintiff also filed a Motion for Leave to Proceed

*in forma pauperis*.  (Doc. 5).

Plaintiff named five (5) Defendants in his Complaint.  Specifically, Defendants were:

Franklin County Sheriff's Department ("FCSD"); Sheriff Dane Anthony; Deputy Stroble; Deputy

Carter; and Deputy Hall.[2]  The four named individual Defendants were employed by Franklin

County in the FCSD.  Plaintiff also included as Defendants "other Unknown Sheriff Department

Deputies," *i.e.* John Doe Deputy Defendants.

---

[1] Plaintiff is now confined at SCI-Houtzdale.  (Doc. 19).

[2] Defendants indicate that Sheriff Anthony's correct first name is  Dane and not Duane,
as Plaintiff spelled it.  Sheriff Anthony's Affidavit confirms this. (Doc. 26, Ex. A).  Thus, we shall use
Defendant Anthony's correct first name herein.

On September 30, 2010, we screened Plaintiff's Complaint and issued a Report and Recommendation ("R&R"). (Doc. 8). We recommended, in part, that all of Plaintiff's claims under the Fifth Amendment and Eighth Amendment be dismissed with prejudice, that Franklin County be substituted as a Defendant in place of FCSD and that FCSD be dismissed, and that all of Plaintiff's claims against Defendants Deputies Stroble, Carter and Hall, as well as the Unknown (John Doe) Deputies, be dismissed without prejudice. Further, we recommended that Plaintiff be allowed to proceed with his Fourteenth Amendment due process claims against Defendants Franklin County and Sheriff Anthony. On December 13, 2010, the Court adopted our R&R. (Doc. 10). The matter is currently proceeding as against the remaining two Defendants, Franklin County and Sheriff Dane Anthony.

After an Answer was filed by Defendants on February 18, 2011 (Doc. 14), the Court issued an order establishing a discovery deadline of August 24, 2011, and a dispositive motion deadline of September 24, 2011.

On August 8, 2011, Plaintiff Tri Thanh Nguyen filed a form Motion for Appointment of Counsel. (Doc. 20). Plaintiff also filed a form Brief in Support of his Motion. (Doc. 21). Plaintiff stated that he was indigent, his English was poor and he was not from the United States, and that he was unable to cite case law and understand law. On August 9, 2011, we issued an Order and denied Plaintiff's Motion for Appointment of Counsel. (Doc. 22).

On September 22, 2011, Defendants Franklin County and Sheriff Anthony jointly filed a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56, with attached exhibits, Exs. A and B, namely, Sheriff Anthony's Affidavit and Deputy Sheriff Carter's Affidavit. **(Doc. 26).** Defendants

also simultaneously filed their support brief and Statement of Undisputed Material Facts ("SMF"). (Docs. 27 and 28).  On September 11, 2011, Plaintiff filed his opposition brief, his Declaration and his 1-page, 5-paragraph Statement of Disputed Material Facts.  (Docs. 32-34).  Defendants filed their reply brief on October 11, 2011.  (Doc. 38).  On October 13, 2011, Plaintiff filed his Objection to Defendants' Motion for Summary Judgment.  (Doc. 40).  Plaintiff also filed, without leave of Court, a supplemental opposition brief to Defendants' Motion for Summary Judgment. (Doc. 42).  We shall also consider Plaintiff's previously filed evidence, namely, the Statement under penalty of perjury of inmate Daniel McCormick.  (Doc. 15).

Defendants' Motion for Summary Judgment (Doc. 26) is now ripe for disposition.[3]

## II. Allegations of Complaint.

Plaintiff alleges that on October 10, 2008, he was arrested for sexual assault on a minor charges and was confined at the FCP as a pretrial detainee.  Plaintiff states that due to his charges, "as a pretrial detainee he was placed in the restrictive housing unit [RHU at FCP] in protective custody and isolation, so no other inmate would be able to harm him."  (Doc. 1, p. 4, ¶ 12.). Plaintiff avers that on October 21, 2010, he was escorted for a court proceeding at the Franklin County Courthouse by Unknown FCSD Deputies.  Plaintiff states that, notwithstanding his status as a pretrial detainee who was in protective custody, the Unknown Sheriff Deputies placed him in a group holding cell with nine other inmates, and that they were all handcuffed and shackled. Plaintiff states that he was then left in the holding cell with the other inmates "totally unattended."

---

[3]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

(*Id.*, ¶'s 13.-14.).  Plaintiff states that two of the inmates with whom he was placed in a holding cell were Daniel McCormick and Brent Thomas, both of whom had histories of violence.  In fact, Plaintiff states that inmate Thomas was a disciplinary custody inmate due to his vicious assault on a correctional officer.  (*Id.*, ¶'s 15.-16.).

Plaintiff avers that inmate Thomas mentioned to female inmates in another holding cell that Plaintiff was a child molester.  Plaintiff further avers that since unknown "sheriff deputies did not properly secure the handcuffs upon inmate Thomas, he was able to slip his hand out of the handcuffs."  (*Id.*, pp. 4-5, ¶'s 17.-18.).

Plaintiff then avers as follows:

19. [Inmate] Thomas immediately began to assault the plaintiff by striking him in the head numerous times in the unattended [holding cell] area.

20.  Thomas ordered the plaintiff to remain quiet, and forced the plaintiff to the rear of the cage, then slipped his hand back into his cuffs when sheriff[']s deputies returned.

21.  After the deputies left the area, Thomas slipped his cuff off yet again, and began beating the plaintiff again.

22.  The plaintiff was bleeding profusely at this time and almost lost consciousness.

23.  The plaintiff began yelling, "Why you do this to me?" rushed to the front of the cage and began screaming, "Please help me! Someone please help me!"

24.  After several minutes a sheriff deputy finally arrived and saw the plaintiff was severely beaten and bleeding.

25.  The deputy then left the unattended inmates, to presumably get a key and help.

26.  Sheriff deputies returned and removed the plaintiff from the cell.

(*Id.*, pp. 5-6, ¶'s 19.-26.).[4]

Plaintiff then received medical attention in the Franklin County Courthouse and back at FCP, including pain medication and an x-ray. Plaintiff states that he was again placed in his cell in protective custody at FCP, where he remained until August 2009. Plaintiff alleges that as a result of the assault by inmate Thomas, he has "suffered permanent damage to his inner-ear and a resultant hearing loss, experienced humiliation, emotional distress, pain and suffering, and was otherwise damaged." (*Id.*, pp. 6-7, ¶'s 27.-33.).[5]

Plaintiff alleges that he was assaulted due to the "lax transportation practices of the [FCSD], which was known to and ratified by the Defendants." Plaintiff avers that Defendants Franklin County and Sheriff Anthony had customs and policies that disregarded excessive risk to inmates in protected classes, and that despite being on notice of the deficient polices, they failed to properly train deputies with respect to the use of handcuffs and shackles when transporting violent inmates. Plaintiff also avers that Defendants Franklin County and Sheriff Anthony authorized and tolerated the improper practices of the FCSD, and failed to supervise deputies. (*Id.*, pp. 7-8).

## III. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed. Rules of Civ. Pro. 56. The court may grant a motion for

---

[4]Plaintiff's above stated allegations regarding the October 21, 2008 incident at FCP are substantiated by the Statement of inmate McCormack. (Doc. 15).

[5]As indicated below, Plaintiff did not submit any medical evidence to show that he suffered any permanent injuries as a result of the assault on him by inmate Thomas. In fact, Defendants' undisputed evidence shows that after the assault on Plaintiff by inmate Thomas, Plaintiff was given first aid treatment and he appeared to be fine.

summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. F.R.C.P. 56( c ).  An issue of fact is "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D.Pa. 1982) aff'd. mem. 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is no genuine issue for trial." F.R.C.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d  Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has indicated that, "although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings,

6

legal memorandum, or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007) (Non-precedential)(citation omitted).

## IV.  Material Facts.

As stated, Defendants filed their SMF, ¶'s 1-26, with respect to their Motion for Summary Judgment as required by Local Rule 56.1 M.D. Pa. (Doc. 28).[6]  All of Defendants' SMF are properly supported by citation to the record, namely, Doc. 26, Exs. A and B.  As Defendants point out (Doc. 36), Plaintiff failed to properly respond, paragraph by paragraph, to each one of their SMF, and he failed to cite to any evidence in the record to dispute any of the Defendants' SMF.  (Doc. 34).  Rather, Plaintiff only filed his Statement of the five issues which he contends are disputed genuine issues of material fact.[7]

Additionally, Plaintiff filed a paragraph-by-paragraph Objection (Doc. 40) and he responds  to each paragraph (1-14) of Defendants' Summary Judgment Motion.  Plaintiff appears to have misconstrued his obligation under Local Rule 56.1 as requiring him to respond *seriatim* to Defendants' Summary Judgment Motion as opposed to responding to each paragraph of Defendants' SMF.  Paragraphs 1-10 of Defendants' Summary Judgment Motion (Doc. 26) are supported by the record, and Plaintiff essentially agrees to them with a clarification as to ¶ 6. Paragraphs 9 and 10 of Defendants' Motion are correct with respect to the remaining claims against each Defendant.

---

[6]"Material facts" are those which might affect the outcome of the suit.  *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

[7] Plaintiff was provided with a copy of the relevant Local Rules of this Court.  (Doc. 2).

As stated, Defendants have properly filed their SMF (Doc. 28) in support of their Summary Judgment Motion (Doc. 26), as required by Local Rule 56.1 of M.D. Pa., and their facts, ¶'s 1-26, are all properly supported by their evidence.  Plaintiff did not properly respond to Defendants' SMF as required by Local Rule 56.1, M.D. Pa., and thus, all of Defendants' SMF are undisputed.  *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michtavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed).  Despite Plaintiff's failure to properly respond to Defendants' statement of facts, we accept Defendants' statement of facts since they are all supported by their undisputed evidence.  Moreover, we will consider Plaintiff's evidence he submitted, Docs. 15 and  33.

Defendants' undisputed SMF are as follows:

1.      Dane Anthony is the Sheriff of Franklin County and has held that position continuously since January 2008.  Affidavit of Sheriff Dane Anthony, ¶ 1. [Doc. 26, Ex. A.]

2.      The Franklin County Sheriff and his office are responsible for the transportation of inmates from the Franklin County Jail to the Franklin County Courthouse for court appearances.  Affidavit of Sheriff Dane Anthony, ¶ 2.

3.      The procedure for handling of prisoners (inmates) from the Franklin County Jail to the Franklin County Courthouse is done pursuant to the Sheriff's orders and policy to insure the safety of the public, the safety of Sheriff's Deputies, and the safety and security of those in their custody.  Affidavit of Sheriff Dane Anthony, ¶ 3.

4.      The policies and procedures in place in October 2008 mandated all prisoners be handcuffed in the front, secured with a waist chain (which is connected to a leather belt) and in leg chains when in the courtroom, except during a jury trial or an Order from the Judge. Affidavit of Sheriff Dane Anthony, ¶ 4.

5.      If two particular inmates were disagreeable with one another or had a known or suspected problem with one another, the correctional officers at the jail would inform the Sheriff's Deputies and these inmates would be separated during transport and while at the courthouse. Affidavit of Sheriff Dane Anthony, ¶ 5.

6.      Inmates were not separated by any prison classification because the number of inmates usually being presented for Court is small and there are only two holding cells at the courthouse. Affidavit of Sheriff Dane Anthony, ¶ 6.

7.      Once at the courthouse, inmates are secured in two holding cells. These holding cells are approximately ten feet by twelve feet and another twelve feet by fourteen feet. When there are both female and male inmates, the females are placed in the smaller holding cell and the males in the larger. Affidavit of Sheriff Dane Anthony, ¶ 7.

8.      When inmates are in the Franklin County Courthouse holding cells, they remain handcuffed, with a waist chain connected to a leather belt and in leg chains while they wait to be called into the courtroom. Affidavit of Sheriff Dane Anthony, ¶ 8; Affidavit of Deputy Sheriff Andrew Carter, ¶ 6. [Doc. 26, Ex. B.]

9.      These two holding cells are directly outside the door to the main Sheriff's Office in the courthouse. Affidavit of Sheriff Dane Anthony, ¶ 9; Affidavit of Deputy Sheriff Andrew Carter, ¶ 7.

10.      When inmates are secured in the holding cells, one or more Deputies maintain a position in the Sheriff's Office which is within ten yards of the holding cell. Affidavit of Sheriff Dane Anthony, ¶ 10; Affidavit of Deputy Sheriff Andrew Carter, ¶ 8.

11.      From the Deputies' position adjacent to the holding cells, they are able to hear and respond to any incident in the holding cells in a matter of less than three to five seconds. Affidavit of Sheriff Dane Anthony, ¶ 11.

12.   Typically, one of the Deputies is able to observe the holding cell through a one-way window in the door between the Sheriff's Office and the holding cell area.  Affidavit of Sheriff Dane Anthony, ¶ 12; Affidavit of Deputy Sheriff Andrew Carter, ¶ 9.

13.   Even if a Deputy is posted in the holding cell area, that Deputy would not be able to respond to a direct physical attack by one inmate against another because: (1) the holding cell doors are locked; and (2) a Deputy will not open the cell door if a physical altercation is occurring between two inmates without necessary backup.  Affidavit of Sheriff Dane Anthony, ¶ 13.

14.   The above procedures are standard operating procedures for prisoners transported to the Franklin County Courthouse from the Franklin County Jail.  Affidavit of Sheriff Dane Anthony, ¶ 14.

15.   On October 21, 2008, Plaintiff, Tri Thanh Nguyen, and Brent Thomas, were transported from the Franklin County Jail to the Franklin County Courthouse for judicial proceedings in their respective cases.  Affidavit of Sheriff Dane Anthony, ¶ 15; Affidavit of Deputy Sheriff Andrew Carter, ¶ 5.

16.   The Franklin County Sherif's Deputies had no knowledge of any problems between Plaintiff Nguyen and Brent Thomas.   Prior to October 21, 2008, Brent Thomas was never involved in any physical assault with another inmate.  Affidavit of Sheriff Dane Anthony, ¶ 16; Affidavit of Deputy Sheriff Andrew Carter, ¶ 6.

17.   Prior to transport of all the inmates from the Franklin County Jail on October 21, 2008, they were handcuffed in the front, secured with a waist chain and belt, and leg chains at all times.  Affidavit of Sheriff Dane Anthony, ¶ 17.

18.   The correctional officers at the Franklin County Jail did not inform the Sheriff's Office Deputies of any problems between Plaintiff Nguyen and Brent Thomas prior to or on October 21, 2008.  Affidavit of Sheriff Dane Anthony, ¶ 18.

19.   From the time that Plaintiff Nguyen and Brent Thomas were transported from the jail to the courthouse and to the holding cells and up until the time of the incident between them, there was nothing unusual between them to have indicated a physical encounter was imminent even

10

likely.  Affidavit of Sheriff Dane Anthony, ¶ 19.

20.     Plaintiff Nguyen never advised anyone involved in the transportation process of being placed in the holding cell that Brent Thomas threatened him or that Plaintiff Nguyen was concerned for his safety.  Affidavit of Sheriff Dane Anthony, ¶ 20; Affidavit of Deputy Sheriff Andrew Carter, ¶ 14.

21.     Based on Sheriff Anthony's investigation of events that occurred on October 21, 2008, it appears that inmate, Brent Thomas, struck inmate Nguyen in the holding cell.  Inmate, Brent Thomas was able to free one of his hands from the handcuff.  Inmate, Brent Thomas, tore and scraped a significant amount of skin from his arm and hands in the process of removing his hand from the handcuff.  Affidavit of Sheriff Dane Anthony, ¶ 21.

22.     Inmate Thomas's removal of one hand from his handcuffs was extraordinarily usual under the circumstances.  Affidavit of Sheriff Dane Anthony, ¶ 22.

23.     Following the altercation, Plaintiff Nguyen was given first aid treatment and appeared to be fine.  Affidavit of Sheriff Dane Anthony, ¶ 23; Affidavit of Deputy Sheriff Andrew Carter, ¶ 13.

24.     Prior to October 21, 2008, there was never an incident of violence between inmates within the holding cells at the Franklin County Courthouse.  Affidavit of Sheriff Dane Anthony, ¶ 24; Affidavit of Deputy Sheriff Andrew Carter, ¶ 14.

25.     All Deputies employed by the Sheriff's Department go through Act 2, [Pennsylvania] state-mandated training, which includes training with respect to security and safety of inmates.  Affidavit of Sheriff Dane Anthony, ¶ 25; Affidavit of Deputy Sheriff Andrew Carter, ¶ 2.

26.     All of the Sheriff's Deputies are properly trained in the use of restraint devices such as department issued handcuffs, prisoner waist chains, leg irons, and plastic loop restraints (flex cuffs).  Affidavit of Sheriff Dane Anthony, ¶ 26; Affidavit of Deputy Sheriff Andrew Carter, ¶26.

Additionally, in his Declaration under penalty of perjury, Plaintiff avers that on October

21, 2008, he was a protective custody inmate at the FCP and that he was transported to the

Franklin County Courthouse for a court appearance.  Plaintiff avers that he was placed in a holding

cell at the Courthouse with nine or more other inmates, including maximum security inmate

Thomas, from whom he was separated at FCP.  Plaintiff avers that in the holding cell at Franklin

County Courthouse, inmate Thomas verbally threatened him, Thomas released one his hands from

his handcuffs, and then Thomas physically assaulted him.

> Plaintiff further avers as follows in his Declaration:
>
> 7.      Not only did said assault go unnoticed by Sheriff Deputies, a sheriff deputy came to the holding cell to remove an inmate and once that inmate was removed Brent Thomas once again assaulted this Plaintiff.
>
> 8.      Contrary to the Defendant Anthony's affidavit at 10, 11, and 12 no deputies maintained a position in which to visually view the holding cell and/or audibly listen to any incident in the holding cell.
>
> 9.      Contrary to the Defendant Anthony's affidavit at 18 the Franklin County jail should have informed deputies of this Plaintiff's status as a protective custody inmate vulnerable to physical attack.
>
> 10.     Contrary to Defendant Anthony's affidavit at 22 deputies should have been aware that one of the inmates was free from handcuff restraints.
>
> 11.     Contrary to Defendant Anthony's affidavit at 23 deputies did not respond immediately.
>
> 12.     All of Defendant Anthony's deputies are not properly trained or, if so, went against said training when an inmate was able to free himself.

(Doc. 33, p. 2, ¶'s 7-12).

Inmate McCormack was also in the holding cell at issue on October 21, 2008, and he

witnessed inmate Thomas' assault on the Plaintiff.  (Doc. 15).  Inmate McCormack bolsters Plaintiff's

version of the attack by inmate Thomas.  Inmate McCormack avers that during the first assault on

Plaintiff, inmate Thomas "tee-ed off" on Plaintiff at least ten times, and that Plaintiff was "hit so hard

he was bleeding from the inner-ear." (*Id.*, p. 1).  Inmate McCormack also substantiates Plaintiff's

averment that Inmate Thomas stopped the first attack on Plaintiff when a Sheriff's Deputy appeared

to remove another inmate from the holding cell, and that  inmate Thomas slid his hand back in his

handcuff and told Plaintiff to sit down.  Inmate McCormack avers that after the Deputies removed

another inmate, inmate Thomas again slipped his hand out of his handcuffs and again began

assaulting Plaintiff.  Inmate McCormack avers that "Thomas hit [Plaintiff] even harder this time.

Blood was splattered on the wall, and [Plaintiff 's] face was really swelling up badly."  (*Id.*, pp. 1-2).

> Inmate McCormack then avers as follows:
>
> [Plaintiff] NGUYEN then began yelling, "Why you do this to me?" and he ran to the front of the cage screaming, "Please help me, someone please help me!"  NGUYEN screamed for what seemed like ten minutes before a sheriff came.  The deputy left the cage area and returned with keys and another deputy, while leaving NGUYEN in the cage with Thomas.
>
> The deputies ordered everyone to stand back, and they immediately grabbed Thomas and tightened his cuffs.  Thomas, and the profusely bleeding NGUYEN were removed from the holding cage.
>
> After the incident the remaining inmates were all removed from the cell, and questioned separately in the sheriff's department by the sheriff. The sheriff specifically asked me if Thomas had slipped his cuff off to beat NGUYEN.  I answered that that is exactly what occurred.  I believe the incident was recorded as there were camera's in the cell areas, and I too believe the interview with the sheriff was also recorded.

(*Id.*, p. 2).

There is no dispute that inmate Thomas was able to slip his hand out of his handcuffs on

two occasions in the holding cell at the Franklin County Courthouse on October 21, 2008, while

he and Plaintiff were under the custody of the Franklin County Sheriff's Office, and that on each

occasion he assaulted Plaintiff.  Also, there is no evidence that when the Sheriff's Deputy appeared

at the holding cell to remove another inmate after the first assault on Plaintiff, Plaintiff informed the Deputy that inmate Thomas assaulted him.

## V. Discussion.

As mentioned, the Court has allowed Plaintiff to proceed with his Fourteenth Amendment due process claims against Defendants Franklin County and Sheriff Anthony. Discovery has been completed and Defendants have filed a Summary Judgment Motion.   Both Plaintiff and Defendants have submitted evidence.

As Defendants indicate, the remaining claim against Defendant Sheriff Anthony arises out of his duty to train and supervise his Deputies in the handling and custody of inmates who are being transported from the FCP to the Franklin County Courthouse for court appearances.  Also, as Defendants indicate, the remaining claim against Defendant Franklin County relates to an alleged unconstitutional custom or policy in the protection of inmates in its custody that proximately caused the alleged failure to protect Plaintiff from another inmate  in its custody.  (Doc. 26, pp. 2-3).   As we indicated in our September 30, 2010 R&R, Plaintiff's claim against Defendant Franklin County is under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Additionally, Plaintiff has sued Defendant Sheriff Anthony in his individual and official capacities, and he avers that all relevant times  this Defendant was acting as an agent, servant and employee of Defendant Franklin County.  (Doc. 1, pp. 2-3).  As such, Plaintiff's claim against Defendant Sheriff Anthony in his official capacity is also a *Monell* claim "because official-capacity lawsuits represent only another way of pleading an action against an entity of which an officer is an agent." *Patterson v. City of Philadelphia*, 2009 WL 1259968, *9 (E.D. Pa. 5-1-09).

1.  *Claims against Defendants under Monell*

Defendants argue that Plaintiff has failed to establish a claim under *Monell* against them. (Doc. 27, pp. 3-6).  We agree.

Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies." *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9; *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).  Since Defendant Franklin County is a local government unit and since Plaintiff has sued Defendant Sheriff Anthony in his official capacity, the standards annunciated in *Monell* apply to them.  *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.), 639 F.Supp.2d 566 (E.D. Pa. 2009); *Patterson v. City of Philadelphia*, 2009 WL 1259968, *9.

As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Franklin County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

2009 WL 2258623, *7.

We find that Plaintiff has not demonstrated a municipal liability claim under *Monell* against Defendants with respect to his stated constitutional claim under the Fourteenth Amendment.  Defendants cannot be held liable for the conduct of persons they supervise pursuant to *respondeat superior* as Plaintiff clearly attempts to do in this case with respect to his Fourteenth Amendment claim.  *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9; *Patterson v. City of*

*Philadelphia*, 2009 WL 1259968, *9.  Rather, "[Defendants are] subject to liability to the extent [they] maintain an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990)).[8]

Thus, municipal liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights."  *Patterson v. City of Philadelphia*, 2009 WL 1259968, *9(citations omitted).  We concur with Defendants that no such custom or policy of Franklin County which caused Plaintiff's injury is demonstrated through evidence by Plaintiff.

As the *Kokinda* Court stated:

> A municipality cannot be held liable for the actions of its
> employees under § 1983 based upon *respondeat superior*.
> *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978).  However, "the government as an
> entity is responsible under § 1983" when it "caused" the Plaintiff's
> injury; that is, "when execution of a government's policy or custom,
> whether made by its lawmakers or by those whose edicts or acts
> may fairly be said to represent official policy, inflicts the injury."
> *Id.* at 694, 98 S.Ct. 2018.  Where, as here, Plaintiff alleges that
> the flawed policy is a failure to train, the municipality can be held
> liable when "'that failure amounts to "deliberate indifference . . .
> [to the constitutional rights of persons with whom the police come
> in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324
> (3d Cir. 2005) (citations omitted).  There must also be a causal
> nexus, in that the "'identified deficiency in [the] training program
> must be closely related to the ultimate 'constitutional'' injury."
> *Id.* at 325 (citations omitted).
>
> To survive a motion to dismiss, the plaintiff must "allege that a 'policy
> or custom' of [the defendants] was the 'moving force' behind the
> [constitutional] violation."  *Grayson v. Mayview State Hosp.*, 293 F.3d
> 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v.*

---

[8]Defendants also cite to *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990). (Doc. 27, p. 4).

*Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Therefore, as the Court in *Patterson v. City of Philadelphia*, 2009 WL 1259968, *10, stated:

> There are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under *Monell,* a plaintiff shows that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz,* 915 F.2d at 850 (*quoting Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) ( *quoting Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986))). A plaintiff may establish a custom, on the other hand, "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (*citing Andrews,* 895 F.2d at 1480). In other words, custom may be established by proving knowledge of, and acquiescence to, a practice. *Fletcher v. O'Donnell,* 867 F.2d 791, 793-94 (3d Cir.1989).
>
> It is clear under either route that "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz,* 915 F.2d at 850 ( *citing Andrews,* 895 F.2d at 1480). In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews,* 895 F.2d at 1481.
>
> In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered. *Bielevicz,* 915 F.2d at 850 ( *citing Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984)). "A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Bielevicz,* 915 F.2d at 851 ( *quoting Spell v. McDaniel,* 824 F.2d 1380, 1391 (4th Cir.1987)).

We find that Defendant Sheriff Anthony had policymaking authority for the Franklin County Sheriff's Office and that he was the decisionmaker for said office.  In fact, Defendant Sheriff Anthony's Affidavit shows this.  (Doc. 26, Ex. A).  Notwithstanding the decisionmaker position of Defendant Sheriff Anthony, we find that Plaintiff has failed to establish  any facts as described above

17

against both Defendants necessary to make them subject to municipality liability in a § 1983 action. Plaintiff does not show any causal nexus between an identifiable policy and his alleged constitutional injuries.   We find that Plaintiff has not sufficiently established a claim under *Monell* against Defendants with respect to his Fourteenth Amendment claim.   Based on *Kokinda, Meyers*, *Patterson* and *Malles*, as well as *Mueller v. Centre County*, 2009 WL 4912305, we find Plaintiff has not submitted any evidence to establish that Defendants caused the assault on him by inmate Thomas by having customs, policies, practices and procedures, and that these policies gave rise to the assault. As Defendants point out (doc. 27, pp. 5-6), and as shown through their undisputed SMF detailed above, Defendant Sheriff Anthony and his office had security policies and procedures in place for inmates who were transported from FCP to the Franklin Courthouse for court appearances, and who were then placed in a holding cell for court.  (Doc. 26, Ex. A, ¶'s 5-14).  The policy required the segregation of inmates by gender and the restraining of inmates.  Also, as Defendants state (Doc. 36, p. 2), despite Plaintiff's evidence which shows that inmate Thomas was able to slip his hand out of his handcuffs and then assault Plaintiff before and after a Deputy Sheriff removed another inmate from the holding cell for court, there is no evidence that Plaintiff complained to the Deputy Sheriff that Thomas assaulted him.  In fact, Plaintiff's own evidence, *i.e.* McCormick's Statement, shows that when the Deputy Sheriff came to the cell after the first assault incident, Thomas slipped his hand back into his handcuff and told Plaintiff to sit down. (Doc. 15).  Indeed, after the first assault, McCormick did not tell the Deputy Sheriff that he witnessed Thomas beat the Plaintiff.  Significantly, in his Declaration, Plaintiff himself does not aver that he told the Deputy Sheriff about the assault when the Deputy came to the holding cell to remove another inmate.  (Doc. 33, p. 2).

18

We find that there is no evidence that Defendant Sheriff Anthony, as policymaker, enacted or authorized any specific policy that harmed Plaintiff. Nor do we find any evidence that either Defendant Sheriff Anthony or Defendant Franklin County had a practice or custom which caused the assault on Plaintiff. As discussed, Plaintiff must show "that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Patterson v. City of Philadelphia*, 2009 WL 1259968, *11 (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)(citation omitted). Thus, Plaintiff must show that the Franklin County Sheriff's Office, which was under Defendant Sheriff Antony's authority, "acted consistently with a municipal practice or custom which caused a deprivation of a constitutional right." *Patterson v. City of Philadelphia*, 2009 WL 1259968, *11. We find no evidence presented by Plaintiff that Defendant Sheriff Anthony "had knowledge of, and acquiesced to, a constitutionally harmful practice." *Id*.

Additionally, as Defendants point out, the evidence shows that Sheriff Anthony did not encourage or acquiesce to a pattern of conduct by his Deputies, which included not following his Office's set procedures for segregating and securing inmates in the holding cell at the Courthouse, "that was so pervasive and well-settled as to constitute a practice or custom within  the meaning of the law." *Id*. As Defendants point out, Sheriff Anthony avers that "[p]rior to October 21, 2008, there was never an incident of violence between inmates within the holding cells at the Franklin County Courthouse." (Doc. 26, Ex. A, ¶ 25). Deputy Sheriff Carter's Affidavit bolsters Defendant Sheriff's Anthony's averment. (*Id*., Ex. B, ¶ 15).

Further, Sheriff Anthony avers:

> 16.    My Deputies had no knowledge of any problems between Plaintiff Nguyen and Brent Thomas.  Prior to October 21, 2008, Brent

Thomas was never involved in any physical assault with another inmate.

17.    Prior to transport of all the inmates from the Franklin County Jail on October 21, 2008, they were handcuffed in the front, secured with a waist chain and belt, and leg chains at all times.

18.    The correctional officers at the Franklin County Jail did not inform my Deputies of any problems between Plaintiff Nguyen and Brent Thomas prior to or on October 21, 2008.

19.    From the time that Plaintiff Nguyen and Brent Thomas were transported from the jail to the courthouse and to the holding cells and up until the time of the incident between them, there was nothing unusual between them to have indicated a physical encounter was imminent or even likely.

20.    Plaintiff Nguyen never advised anyone involved in the transportation process or at the time being placed in the holding cell that Brent Thomas threatened him or that Plaintiff Nguyen was concerned for his safety.

(Doc. 26, Ex. A, ¶'s 16-20).

Moreover, as Defendants state (Doc. 27, p. 6), a single incident of unconstitutional conduct is not sufficient to impose municipal liability under *Monell*, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)(citations omitted).

As discussed, we find no evidence that there was a practice or custom of Franklin County and its Sheriff's Office that violated Plaintiff 's constitutional rights and were the proximate cause of the assault on Plaintiff by inmate Thomas.  We do not find that Plaintiff's Declaration (Doc. 33) disputes Defendants' evidence and that at best, Plaintiff's Declaration shows negligence by Defendants. Also, as discussed, Plaintiff does not explain why he did not tell the Deputy Sheriff about the first assault on him when the Deputy arrived to remove another inmate from the cell.  In any

event, as stated, a single incident is not enough to impose liability against Defendants under *Monell*.

*See Groman, supra*.

Therefore, we will recommend that Defendants' Summary Judgment Motion be granted with respect to Defendant Franklin County and Defendant Sheriff Anthony in his official capacity since we find that the undisputed evidence shows that they cannot be held liable for Plaintiff's injuries under *Monell*.

Defendants also argue that they are entitled to summary judgment with respect to any other type of constitutional claim Plaintiff raises since the evidence does not meet the requirements for any claim.

### 2.  Failure to Train Claim

As the Court in *Patterson v. City of Philadelphia*, 2009 WL 1259968, *12, stated:

As with other § 1983 claims, to establish liability for a "failure to train" claim, a plaintiff need not prove a municipality has a formal policy of not training its employees. *See City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees."). A municipality with a constitutional policy could nonetheless be liable on a failure to train claim. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need ." *Id.* Nonetheless, an allegation of "failure to train" can be the basis for liability under § 1983 only in limited circumstances. *Id.* at 387. *"City of Canton* teaches that municipal liability for failure to train cannot be predicated solely on a showing that the City's employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3d Cir.1991). To maintain a failure to train claim, a plaintiff must allege that the failure amounts to deliberate indifference to the constitutional rights of the person with whom the municipal agents come in contact. *See id.* at 1028. In other words, "[o]nly

where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." *City of Canton,* 489 U.S. at 388. In addition, the identified training deficiency must be closely related to the ultimate constitutional injury. *Id.* at 391; *Colburn,* 946 F.2d at 1030.

Defendants' evidence shows, as demonstrated by their undisputed SMF and by Deputy Sheriff Carter's and Sheriff's Anthony's Affidavits, Deputies were properly trained in transporting, securing and protecting the safety of inmates. Defendants' undisputed evidence also shows that Deputies receive PA Act 2 training, which is detailed by Deputy Carter. (Doc. 26, Exs. A and B). Also, since neither Sheriff Anthony nor Deputy Carter were aware of any problem between Plaintiff and Thomas, and since Thomas was never previously involved in an assault on another inmate, Plaintiff has failed to show the Defendants' were deliberately indifferent to his constitutional rights by failing to protect his safety on October 21, 2008. Further, Deputy Carter avers that on October 21, 2008, he was stationed adjacent to the holding cells at the courthouse, and could observe the holding cell in which Plaintiff and Thomas were confined, through a one-way window. Deputy Carter avers that when he heard the disturbance in the cell, he immediately went to the cell area and Plaintiff told him Thomas hit him. Deputy Carter immediately segregated Thomas from the other inmates, and Thomas was taken upstairs by other Deputies. First aid was then provided to Plaintiff, and Plaintiff appeared to be fine. (Doc. 26, Ex. B, ¶'s 8-13). Also, as noted, Plaintiff did not submit any evidence showing that he received any permanent injuries from the assault by inmate Thomas.

Plaintiff has not submitted any evidence regarding the training, or lack thereof, and performance of the Deputies' jobs with respect to protecting inmates transported from FCP to the courthouse for court appearances. Plaintiff's evidence only shows that the Deputies could have been

22

better trained in making sure the handcuffs of inmates were secured.  As Defendants state, this amounts to a negligence claim and not a constitutional claim.  Regardless, we find that Defendants are entitled to summary judgment with respect to Plaintiff's failure to train claim.  *See Patterson, supra*.

        3. *State Created Danger Doctrine*

Defendants argue that Plaintiff has not established a state created danger claim insofar as he alleges that Defendants were deliberately indifferent to his safety in violation of the Fourteenth Amendment.   (Doc. 27, pp. 7-13).

Regarding a claim of substantive due process, the Fourteenth Amendment  provides, in part, that "no State [shall] deprive any person of life, liberty, or property without the due process of law...." U.S. Const. Amend. XIV, § 1.   The Court in  *Eichelman v. Lancaster County,* 510 F. Supp. 2d 377, 388 (E.D. Pa. 2007), stated:

> In *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court explained that "the core of the concept" of due process is "protection against arbitrary action" but that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis,* 523 U.S. at 845, 846, 118 S.Ct. 1708. In a substantive due process challenge, therefore, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n. 8, 118 S.Ct. 1708. The "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir.1999).

Further, the Court in *Eichelman v. Lancaster County,* 510 F. Supp. 2d at  389, stated:

> With respect to alleged constitutional violations occurring in the prison context, as another court in this district has noted, pretrial detainees asserting a constitutional violation based on conditions of their confinement must prove that prison officials acted with deliberate indifference; **a lack of due care by an official that results in**

23

**unintended injury is not actionable under the Due Process Clause.**
*See Lassiter v. Buskirk,* Civ. A. No. 03-5511, 2006 WL 1737180 (E.D. Pa. June 22, 2006) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 188 (3d Cir.1993), and *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)). Where the injury experienced by a detainee is at the hands of another prisoner, § 1983 liability may be imposed on prison officials "if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." *Davidson v. O'Lone,* 752 F.2d 817, 828 (3d Cir.1984). Courts have found liability on behalf of prison officials in appropriate circumstances. *See, e.g., Wade v. Haynes,* 663 F.2d 778 (8th Cir.1981) (prisoner small in stature and previously designated as susceptible to physical abuse nonetheless placed in cell with two inmates, one of whom was known to have fought in prison and was recommended for separation from general population; verdict for plaintiff following assault upheld due to evidence officer acted recklessly and with callous indifference to plaintiff's safety).

(Emphasis added).

Defendants argue that the undisputed evidence shows Plaintiff's claim against Sheriff Anthony amounts to only the lack of due care and negligence rather than reckless and deliberate indifference. As discussed, a lack of due care by officials that results in unintended injury is not actionable under the Due Process Clause. *See Eichelman v. Lancaster County*, *supra*. Further, Defendants state that Plaintiff does not demonstrate intentional conduct, deliberate or reckless indifference to his safety, or callous disregard with respect to the conduct of Franklin County Sheriff Anthony.

In *Walter v. Pike County*, 544 F3d. 182, 191-192 (3d Cir. 2008), the third Circuit stated:

The state-created danger doctrine-developed by a number of Circuit Courts of Appeal but not yet formally recognized by the Supreme Court-is an exception to the rule that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or

property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In other words, even where a plaintiff suffers harm at the hands of a non-governmental actor, the government may be liable because "the government has a constitutional duty to protect a person against injuries inflicted by a third-party when it affirmatively places the person in a position of danger the person would not otherwise have faced." *Kamara v. AG of the United States,* 420 F.3d 202, 216 (3d Cir.2005).

In *Brickell v. Clinton County Prison Bd.*, 658 F. Supp. 2d 621, 628 (M.D. Pa. 2009), the Court stated:

> To make out a state-created danger claim under § 1983, Brickell must meet a four-part test. *Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir.2006). First, " 'the harm ultimately caused [must have been] foreseeable and fairly direct.' " *Id.* (quoting *Kneipp v. Tedder,* 95 F.3d 1199, 1208 (3d Cir.1996)). Second, there must have been "a state actor [who] acted with a degree of culpability that shocks the conscience." *Id.* (citing *Schieber v. City of Philadelphia,* 320 F.3d 409, 416 (2003)). Third, there must have been a relationship between the plaintiff and the state such that "'the plaintiff was a foreseeable victim of the defendant's acts' " or that she was a " 'member of a discrete class of persons subjected to the potential harm brought about by the states' actions.' " *Id.* (quoting *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906, 913 (3d Cir.1997)). Last, a state actor must have "affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* (citing *Rivas v. City of Passaic,* 365 F.3d 181, 195 (3d Cir.2004)).

*See also Walter v. Pike County*, 544 F3d. at 192; *Kaucher v. County of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006).

Also, as Defendants correctly point out (Doc. 27, p. 8), under the state created danger doctrine, it is not sufficient to establish a claim if the state actor's conduct amounted to negligence. *See Kaucher v. County of Bucks*, 455 F.3d at 435-436(citing in part *Baker v. McCollan*, 443 U.S. 137,

25

146 (1979)("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").

We agree with Defendants that no genuine issues of material fact exist with respect to the four stated elements of a state created danger claim.  We find that insofar as Plaintiff is attempting to hold Defendants liable under §1983 based on the state-created danger theory, he has failed to show by evidence that the assault on October 21, 2008, by inmate Thomas was foreseeable  and that Sheriff Anthony acted with a degree of culpability that shocks the conscience.  Thus, Plaintiff's state-created danger claim fails and Defendants are entitled to summary judgment on it.   *See Kaucher v. County of Bucks*, 455 F.3d at 431.

As Defendants state, they had no prior knowledge of any threats to Plaintiff by inmate Thomas.  Also, inmate Thomas was not involved in any prior assaults on inmates.  Plaintiff did not put Defendants on notice that he was threatened by Thomas or that he was in danger from other inmates. (Doc. 26, Ex. A, ¶ 20).  As discussed, Plaintiff's evidence shows, at most, that Defendants' conduct was negligent and not conscience shocking behavior.

Plaintiff argues that Defendants should have been aware that he and inmate Thomas should have been separated since he was a protective custody inmate at FCP and Thomas had violent propensity due to his alleged prior assault on a FCP Correctional Officer.  However, there is no evidence that any staff at FCP warned the Sheriff's Deputies that Plaintiff and inmate Thomas should be separated due to Plaintiff's custody classification.  Further, the undisputed evidence shows that the FCP Correctional Officers did not warn the Deputies of any problems between Plaintiff and inmate Thomas.  Also, the undisputed evidence shows that inmate Thomas had no prior history of an assault

on another inmate.  Additionally, Plaintiff undisputedly did not advise Defendants or Sheriff's Deputies that inmate Thomas had threatened him or that he felt inmate Thomas was a threat to his safety at the relevant time.

Additionally, Plaintiff's state created danger claim fails under the fourth element since he has not shown that Defendants "acted affirmatively to create a risk of danger that would otherwise not have existed." *Id*. at 432.  In *Kaucher*, the Court addressed the fourth element and stated:

> The fourth element of the state created danger test asks whether a defendant exercised his or her authority to create a foreseeably dangerous situation. In *Bright*, we emphasized that "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." FN9 443 F.3d at 282. But a specific and deliberate exercise of state authority, while necessary to satisfy the fourth element of the test, is not sufficient. There must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff "more vulnerable to danger than had the state not acted at all." *Id*. at 281; *see also Smith I*, 318 F.3d at 510 (holding the fourth element asks if "but for the defendants' actions, the plaintiff would have been in a less harmful position").

*Id*.(footnote omitted).

We find that there is no evidence showing an affirmative act by either Defendant which directly caused the assault on Plaintiff by inmate Thomas.  As Defendants state, "Plaintiff fails to establish any particular Defendant did or failed to do anything."  (Doc. 27, p. 12).  Also, as stated, Defendants did not know and had no reason to know that inmate Thomas was a threat to Plaintiff on October 21, 2008, and that he would be able to slide out one of his hands from handcuffs and assault Plaintiff.  Sheriff Anthony avers that "Inmate Thomas' removal of one hand from his handcuffs was extraordinary unusual under the circumstances and [his] Deputies were unaware that [Thomas] had managed to free his one arm before the altercation with Plaintiff Nguyen."  (Doc 26, Ex. A, ¶ 22).

27

Further, as Defendants indicates they "were not personally or directly involved in the searching, transporting, or safeguarding of inmate Brent Thomas at the time of the alleged incident." (Doc. 26, p. 13).

As such, we find that Plaintiff has failed to show the state's action was the "but for cause" of the danger Plaintiff faced from inmate Thomas on October 21, 2008.   Thus, Plaintiff fails to show that Defendants are labile under §1983 based on the state-created danger theory.   *See Kaucher*, 455 F.3d at 432.   In short, as repeatedly discussed, the undisputed evidence shows that there was simply no reason known to Defendants that placing Plaintiff in a holding cell with inmate Thomas, both in handcuffs in the front, secured with waist chains and belts as well as  leg chains, would place Plaintiff in harm's way and that Thomas would be able to slide out one hand from the handcuffs and assault Plaintiff.  There was also nothing unusual between Plaintiff and Thomas prior to the assault to show that an attack was imminent.  Defendants were not warned or aware that Thoms posed a threat to Plaintiff prior to the assault.  Thus, Plaintiff has not presented evidence of affirmative acts by Defendants that were the "but for cause" of the assault on him by inmate Thomas.[9]

Accordingly, we will recommend that Defendants' Summary Judgment (Doc. 26) be granted and, that Judgment be entered in favor of Defendants and against Plaintiff Nguyen.

---

[9]Insofar as Plaintiff is deemed as claiming that Defendants failed to act affirmatively  to train deputies about the possibility of inmates becoming free from handcuffs or that the Franklin County Prison staff should have informed the Deputies that Plaintiff was a protective custody inmate, the Third Circuit has "held failures to act cannot form the basis of a valid §1983 claim." *See Kaucher v. County of Bucks*, 455 F.3d at 433, n. 11.

**VI.  Recommendation.**

Based on the above, it is respectfully recommended that Defendants' Summary Judgment **(Doc. 26)** be granted, and that Judgment be entered in favor of Defendants and against Plaintiff Nguyen.




<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: December 16, 2011**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TRI THANH NGUYEN,                    :          CIVIL ACTION NO. **3:CV-10-1866**
                                     :
            Plaintiff               :          (Judge Caputo)
                                     :
            v.                       :          (Magistrate Judge Blewitt)
                                     :
FRANKLIN COUNTY and SHERIFF          :
DANE ANTHONY,                        :
                                     :
            Defendants               :

**<u>NOTICE</u>**

        **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 16, 2011.**

        Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

        Any party may object to a magistrate judge's proposed findings,
        recommendations or report addressing a motion or matter described in
        28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
        disposition of a prisoner case or a habeas corpus petition within fourteen (14)
        days after being served with a copy thereof.  Such party shall file
        with the clerk of court, and serve on the magistrate judge and all
        parties, written objections which shall specifically identify the
        portions of the proposed findings, recommendations or report to which
        objection is made and the basis for such objections.  The briefing
        requirements set forth in Local Rule 72.2 shall apply.  A judge shall
        make a *de novo* determination of those portions of the report or
        specified proposed findings or recommendations to which objection
        is made and may accept, reject, or modify, in whole or in part, the findings
        or recommendations made by the magistrate judge.  The judge, however,
        need conduct a new hearing only in his or her discretion or where
        required by law, and may consider the record developed before the
        magistrate judge, making his or her own determination on the basis
        of that record.  The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with
instructions.


                                                   **s/ Thomas M. Blewitt**

                                                   **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**

**Dated:  December 16, 2011**