**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRI THANH NGUYEN, | |
| Plaintiff, | CIVIL ACTION NO. 3:10-cv-1866 |
| v. | (JUDGE CAPUTO) |
| FRANKLIN COUNTY and SHERIFF DANE ANTHONY, | (MAGISTRATE JUDGE BLEWITT) |
| Defendants. | |

## MEMORANDUM

Presently before the Court is the Report and Recommendation of Magistrate Judge Thomas M. Blewitt, recommending that the Defendants' Motion for Summary Judgment be granted. As the Court finds no constitutional violation pursuant to the state-created danger doctrine, the Court agrees that Plaintiff's *Monell* claim must fail. Therefore, the Court will adopt Magistrate Judge Blewitt's Report and Recommendation and grant summary judgment in the Defendants' favor.

## BACKGROUND

Plaintiff Tri Thanh Nguyen was a protective custody inmate at the Franklin County Jail.[1] On October 21, 2010, Nguyen was escorted by Franklin County Sheriff's Deputies to the Franklin County Courthouse for a court appearance. He was placed in a holding cell with

---

[1] For clarification, although there are no facts in the record to support this claim, Nguyen's Complaint states that "[d]ue to the nature of the plaintiff's charges, as a pretrial detainee he was placed in the restrictive housing unit . . . in protective custody and isolation, so no other inmates would be able to harm him." (Compl. at ¶ 12, Doc. 1.) Specifically, he alleges that other inmates perceived him to be a child molester. (*Id.* at ¶ 17.)

general population inmates from the Franklin County Jail. While inside the Courthouse holding cells, inmates remain secured at all relevant times through leg chains and handcuffs with a waist chain connected to a leather belt, and there had never been any previous incident of violence between inmates within the holding cells. Nevertheless, one of the inmates in the cell that day, Brent Thomas, was able to free one of his hands from his handcuff and assaulted Nguyen while the Sheriff's Deputy was away. Before the Deputy returned, Inmate Thomas reapplied his handcuffs and the Deputy did not notice that anything had transpired. When the Deputy left again, Inmate Thomas once again freed himself and assaulted Nguyen. Nguyen called for help, the two inmates were separated, and Nguyen was given medical assistance. There are differing accounts as to the extent of Nguyen's injuries. At no point before calling the Deputy for help did Nguyen advise anyone that he was potentially threatened or that he felt concerned for his safety.

On September 7, 2010, Nguyen filed this *pro se* civil rights action with the Court pursuant to 42 U.S.C. § 1983. (Doc. 1). In it, Nguyen claims that he was assaulted due to the "lax transportation practices of the Franklin County Sheriffs, which was known to and ratified by the defendants." (Compl. at ¶ 34, Doc. 1.) Specifically, Nguyen argues that the Defendants had customs and policies in place that disregarded an excessive risk to inmates in protected classes, and that despite being on notice of their deficient polices, the Defendants failed to properly train and supervise deputies with respect to inmate safety. These shortcomings pertained to improper handcuff application, failure to separate dangerous and vulnerable inmates, and declining to verify an inmate's status as protected or disciplinary prior to transit. On September 30, 2010, Magistrate Judge Blewitt screened Plaintiff's Complaint and issued a Report and Recommendation recommending, in pertinent

part, that all of Nguyen's claims under the Fifth Amendment and Eighth Amendment be dismissed with prejudice; that Franklin County be substituted as a Defendant in place of Franklin County Sheriff's Department and that Franklin County Sheriff's Department be dismissed; and that all of Nguyen's claims against Deputies Stroble, Carter, and Hall, as well as the Unknown (John Doe) Deputies be dismissed without prejudice. On December 13, 2010, the Court adopted Magistrate Judge Blewitt's Report and Recommendation which left remaining Nguyen's Fourteenth Amendment due process claim against Defendants Franklin County and Sheriff Anthony.

On September 22, 2011, the remaining Defendants moved for summary judgment, and Magistrate Judge Blewitt issued a Report and Recommendation on December 16, 2011 recommending that the Defendants' Motion be granted. Nguyen filed an objection to the Report and Recommendation, and the Defendants filed their response. This issue is now ripe for the Court's review.

## DISCUSSION

**I. Legal Standards**

**A.    Legal Standard for Reviewing a Report and Recommendation**

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). In making its *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829

F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998). As such, the Court reviews the portions of the Report and Recommendation to which the Petitioner objects *de novo*. The remainder of the Report and Recommendation is reviewed for clear error.

### B.    Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where

there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler*

5

*County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## II. Plaintiff's Objections to the Report and Recommendation

### A. Deeming Admitted Defendants' Statement of Material Facts

Magistrate Judge Blewitt determined that Nguyen failed to comply with Middle District Local Rule 56.1, which requires a party opposing summary judgment to provide "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [of the movant]" and including "references to the parts of the record that support the statements." Rule 56.1 further states that where a party fails to file his own statement of facts, his opponent's facts will be deemed admitted. While the Defendants filed their statement of undisputed material facts in accordance with the Rule, Nguyen did not respond paragraph by paragraph to these material facts and failed to cite to any evidence in the record to dispute any of them. Instead, Nguyen filed a statement contending that there are five specific issues of material fact in dispute. (Doc. 34.)

Because *pro se* filings "must be liberally construed," *Liggon-Redding v. Estate of Robert Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011), the Court agrees that Rule 56.1 should not automatically trigger a technical foreclosure of a *pro se* plaintiff's ability to make out their case. *See* L.R. 1.3 ("The court may suspend [the local] rules in individual cases."). Here, however, Magistrate Judge Blewitt properly considered the Defendants' statement of material facts to the extent they were supported by undisputed evidence, but also all of the

6

evidence submitted by the Plaintiff.  Since the Court finds that Magistrate Judge Blewitt considered the record as a whole, a *de novo* review of this determination reveals no error. Moreover, in reviewing Nguyen's further objections below, the Court will similarly consider the facts in the record as a whole.

### B.     State-Created Danger Doctrine

Nguyen objects to Magistrate Judge Blewitt's determination that Nguyen's assault was unforeseeable and without the requisite culpability to implicate the state-created danger doctrine.[2]  Nguyen must demonstrate the existence of a state-created danger as his remaining claim rests upon a violation of the Due Process Clause of the Fourteenth Amendment and the state-created danger doctrine is an exception to the general rule that states have no affirmative duty to protect their citizens.

The Due Process Clause forbids states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  However, it imposes no obligation that the government aid or protect its citizens. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 255 (3d Cir. 2007) (citing *DeShaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 196 (1989)).  It is well established that the protections afforded by the Amendment "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means," specifically the actions of private parties. *DeShaney*, 489 U.S. at 195.  While a state "does not become the permanent guarantor of an individual's safety by having once offered him shelter,"

---

[2] Nguyen does not point to any specific errors in the Magistrate Judge's analysis, but instead repeats in his Objection his argument verbatim from his Brief in Opposition. Nevertheless, the Court will conduct a *de novo* review of this objection.

*DeShaney*, 489 U.S. at 189, the state may violate the constitution where its actions are "affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'"  *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citing *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003)).  This is the essence of the state-created danger doctrine.  While a state has no constitutional obligation to assist its citizens, it can be liable for its "affirmative acts which work to plaintiffs' detriments in terms of exposure to danger."  *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1374 (3d Cir. 1992).  The Seventh Circuit has opined in a popular quote that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."  *Bowers v. De Vito*, 686 F.2d 616, 618 (7th Cir. 1982).

In the Third Circuit, in order to make out a claim under the state-created danger exception, a plaintiff must demonstrate that:

> (1) "the harm ultimately caused was foreseeable and fairly direct;"
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright*, 443 F.3d at 281 (citations omitted).  Ultimately, the Court agrees with Magistrate

8

Judge Blewitt that the Defendants were not sufficiently culpable for Nguyen's injury and that it was not sufficiently foreseeable for the state-created danger doctrine to apply.

### 1. Degree of Culpability that Shocks the Conscience

While the requisite degree of culpability fluctuates with the circumstances, "[i]n a case where state actors have the time to make unhurried judgments, the level of culpability required to shock the conscience is deliberate indifference." *Moore v. Richman*, 797 F. Supp. 2d 572, 585 (W.D. Pa. 2011) (quoting *Navolio v. Lawrence County*, 406 Fed.Appx. 619, 624 (3d Cir. 2011)). In particular, "pretrial detainees asserting a constitutional violation based on conditions of their confinement must prove that prison officials acted with deliberate indifference; a lack of due care by an official that results in unintended injury is not actionable under the Due Process Clause." *Eichelman v. Lancaster County*, 510 F. Supp. 2d 377, 389 (E.D. Pa. 2007). "Where the injury experienced by a detainee is at the hands of another prisoner, § 1983 liability may be imposed on prison officials 'if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials.'" *Id.* (quoting *Davidson v. O'Lone*, 752 F.2d 817, 828 (3d Cir. 1984)). While actual knowledge may not be required for liability, "generally, a municipality may be held liable for a constitutional violation arising from a policy or custom if it demonstrates indifference to a known or obvious consequence." *Watson v. Methacton School Dist.*, 513 F. Supp. 2d 360 (E.D. Pa. 2007) (quoting *Sanford v. Stiles*, 456 F.3d 298, 310 n.13 (3d Cir.2006)).

Here, there are no facts suggesting that the actions of the Sheriff's Deputies shock the conscience. Specifically, there are no facts suggesting any deliberate indifference.

As an initial matter, there is no evidence in the record that any of the Sheriff's Deputies were oblivious or indifferent to the insufficiency of Inmate Thomas's handcuffs.[3] Sheriff Dane Anthony affirmed that "Inmate Thomas' removal of one hand from his handcuffs was extraordinarily unusual under the circumstances and [his] Deputies were unaware that he had managed to free his one arm before the altercation with Plaintiff Nguyen." (Anthony Aff. at ¶ 22, Defs.' Ex. A.)  There is no contrary evidence in the record suggesting that anyone aside from Inmate Thomas even imagined that it would be possible for him to free his hands.

The issue of inmate separation is a tougher one.  Nguyen alleges that the Franklin County Sheriff's Department failed to implement a policy of categorizing and separating inmates "with actual knowledge of substantial risk for safety, deliberate indifference and gross negligence."  (Compl. at ¶ 1, Doc. 1.)  Similarly, in his objection to the Report and Recommendation, Nguyen concludes that "[t]he defendants acted recklessly in conscious disregard of that risk." (Pl.'s Objection at 6, Doc. 45.)  The evidence, however, does not support these assertions.  Instead, the evidence submitted by the Defendants, namely the affidavits of Defendant Sheriff Dane Anthony and Deputy Sheriff Andrew Carter, supply facts indicating that the Defendants were unaware that Nguyen was in any particular danger. Deputy Sheriff Carter, who responded to Nguyen's assault, represents that "Plaintiff Nguyen never advised [him] that he was having any problem with Brent Thomas or was concerned for his safety" (Carter Aff. at ¶¶ 10-11, 14, Defs.' Ex. B), and that he in fact "had no

---

[3]The standard procedure, which was followed on the day in question, is to secure the inmates at all relevant times with leg chains and handcuffs with a waist chain connected to a leather belt. (Anthony Aff. at ¶¶ 8, 14, 17 Defs.' Ex. A.)

knowledge of any problem between Plaintiff Nguyen and Brent Thomas" (*Id.* at ¶ 6). He also affirms that prior to the incident in question, "Brent Thomas was never involved in a physical assault with another inmate" (*Id.*), although Daniel McCormick, an inmate and witness to the attack, stated that Brent Thomas was a "disciplinary inmate with a history of violence." (McCormick Statement, Doc. 15.) Sheriff Anthony confirms Deputy Carter's representations, stating that his "Deputies had no knowledge of any problems between Plaintiff Nguyen and Brent Thomas" (Anthony Aff. at ¶ 16, Defs.' Ex. A), and that "[t]he correctional officers at the Franklin County Jail did not inform [his] Deputies of any problems between Plaintiff Nguyen and Brent Thomas prior to or on October 21, 2008" (*Id.* at ¶ 18). Notably, Sheriff Anthony states that standard operating procedures were followed on the day in question, and that "[i]f two particular inmates were disagreeable with one another or had a known or suspected problem with one another, the correctional officers at the jail would inform my deputies and these inmates would be separated during transport and while at the courthouse." (*Id.* at ¶ 5.) No such information was given to the Deputies on the date in question. (*Id.* at ¶ 18.) Moreover, Nguyen never advised anyone during transport that he was concerned for his safety.[4] (*Id.* at ¶ 20.)

The evidence presented by Nguyen does not refute these facts. Nguyen's

---

[4] Nor did Nguyen alert the Deputy to the danger after the first attack. (McCormick Statement, Doc. 15.) This overall lack of affirmative notice implicates the forth prong of the analysis–that the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. Entering such a situation knowingly and voluntarily can terminate a state actor's liability for the ensuing state-created danger. *See e.g. Crawford v. Beard*, CIV.A.04-0777, 2005 WL 139082 at * (E.D. Pa. Jan. 19, 2005) *aff'd*, 173 F. App'x 176 (3d Cir. 2006) (finding that defendants did not place the plaintiff nurse in a dangerous position when she entered an inherently dangerous prison jail cell voluntarily).

Declaration represents that he was "a protective custory [sic] inmate . . . placed in a holding cell with nine or more of the very inmates that he was separated (protected) from at the Franklin County jail." (Nguyen Decl. at ¶¶ 4-5, Doc. 33.)  While this may be true, and while it is now clear that Inmate Thomas is dangerous, Nguyen's declaration does not assert that the danger to him was intentionally disregarded.  Instead, he avers that the correctional officers "*should* have informed the deputies of this Plaintiff's status as a protective custody inmate vulnerable to physical attack" and "*shold* [sic] have been aware that one of the inmates was free from handcuff restraints" (*Id.* at ¶¶ 9-10 (emphasis added)).  Moreover, in "Plaintiff's Statement of Disputed Material Facts" Nguyen lists "Whether the Franklin County Jail should ave [sic] notified Franklin county sheriffs as to Plaintiff's protective custody status pursuant to the Franklin County polices, customs and directives." (Doc. 34.)  From these combined sources in the record, it is undisputed that the Deputy Sheriffs escorting Nguyen had no knowledge of his endangered status.  Therefore, as there are no material facts in dispute as to whether the Defendants were deliberately indifferent to any jeopardy that Nguyen was put in, summary judgment is warranted on this issue in favor of the Defendants.

### 2. Harm Ultimately Caused was Foreseeable and Fairly Direct

Magistrate Judge Blewitt concluded that the harm to Nguyen also failed to be foreseeable and fairly direct.  Under this prong of the state-created danger analysis, a plaintiff must first establish foreseeability, demonstrating "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Bryan v. Erie County Office of Children & Youth*, C.A. No. 03-259 Erie, 2012 WL 993245 at *22 (W.D. Pa. Mar. 22, 2012)

(quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 238 (3d Cir. Pa. 2008)). Crucially, this inquiry considers "whether a defendant exercised his or her authority to create a foreseeably dangerous situation." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006). After establishing such foreseeability, a plaintiff must then show that the "harm is a 'fairly direct' result of the defendant's acts." *Phillips*, 515 F.3d at 239. This is because the state-created danger doctrine requires a "direct causal relationship between the affirmative act of the state and plaintiff's harm." *Id.* Unless the action in question was the "but-for" cause of the harm, the exception does not apply. *Id.* Moreover, "affirmatively creating dangerous conditions" does not suffice. *Id.* at 433. In *Morse v. Lower Merion School District*, the Third Circuit found that a school door left purposely unlocked elevated the risk that a teacher would be attacked. 132 F.3d 902, 915 (3d Cir. 1997). However, even though this was exactly the harm that ultimately materialized, the state action did not satisfy the fourth prong of the test as the "deadly attack was not a foreseeable and fairly direct result of defendants' behavior." *Id.* at 915-16. To be sure, the state actor must "directly place[] the victim in harm's way." *Id.* at 915.

As noted above, the facts before the Court indicate that the Defendants were not aware that Nguyen was exposed to a heightened risk. The Third Circuit explicitly requires that a plaintiff show "an awareness on the part of the state actors that rises to level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. As there are no facts in the record suggesting that any defendant was on notice of any particular threat to Nguyen–whether from his vulnerable status or Inmate Thomas's deficient handcuffing–this element is also unsatisfied. Therefore,

13

the Court finds no facts supporting the state-created danged doctrine and will grant summary judgment in the Defendants' favor on this issue.

### B.   Plaintiff's *Monell* Claims

Nguyen asserts that "the mere fact that the Franklin County Jail and the Sheriff's Department does not have a policy that separates inmates by prison classification violated [his] substantive Due Process Rights." (Pl.'s Supplemental Br. at 3, Doc. 42.) This claim sounds under *Monell*, which provides that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *Williams v. West Chester*, 891 F.2d 458, 467 (3d Cir.1989). To establish municipal liability, a plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of his injury. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990). However, in finding no constitutional violation above, it is not necessary to analyze the existence of *Monell* liability. *Grazier v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) ("This conclusion follows naturally from the principle that municipal liability will only lie where municipal action actually caused an injury."); *Deninno v. Municipality of Penn Hills*, 269 Fed. Appx. 153, 158 (3d Cir. 2008) ("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual defendants violated the Constitution."); *Bowser v. Borough of Birdsboro*, Civ. Act. No. 11-598, 2011 WL 4479596 at *2 (E.D. Pa. Sept. 27, 2011) ("Because the plaintiff has not demonstrated that her

14

constitutional rights were violated, these [*Monell*] claims fail as a matter of law."). Therefore, in the absence of a constitutional violation under the state-created danger doctrine,[5] Nguyen's *Monell* claim must fail.[6]

Moreover, Nguyen's *Monell* claim also fails on the merits. This is because Nguyen "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the County Comm'Rs v. Brown*, 520 U.S. 397, 404 (1997). This requires not only the requisite culpability, but "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Here, there are no material facts suggesting that the municipality's failure to have a policy alerting inmate status and

---

[5] To the extent Nguyen seems to argue in his Objection that his *Monell* claim is predicated on the Eighth Amendment ("said policy is in direct conflict of [sic] the Eighth Amendment" (Objection at 5, Doc. 45)), the Court notes that this basis of liability also fails as Nguyen's claims under the Fifth and Eighth Amendments were dismissed in the Court's December 13, 2010 Order. (Doc. 10.)

[6] Although Magistrate Judge Blewitt does not address Defendant Sheriff Anthony's personal liability as a supervisor, this was not in clear error as this claim fails for the same reason. Assuming the continuing validity of supervisory liability, *see Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011), where a supervisor did not directly participate in violating a plaintiff's rights, he may still be liable under Section 1983 where he "directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004). A supervisor may also be liable under § 1983 "if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Argueta*, 643 F.3d at 72 (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir.2001)). However, in the absence of an underlying constitutional violation there can be no supervisory liability on a "knowledge or acquiescence" or "failure to train" theory. *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir.2011); *Argueta*, 643 F.3d at 72. Since there was no unconstitutional conduct, supervisory liability also fails on a policy or practice approach. *See e.g. Mitchell v. Flaherty*, No. 2:11–cv–610, 2012 WL 266467 at *8 (W.D. Pa. Jan. 30, 2012) (interpreting *Arguenta* to preclude all forms of Section 1983 supervisory liability in the absence of a constitutional violation).

separating inmates accordingly was the driving force of Nguyen's injury.  Instead, the facts suggest other more proximate causes–chiefly that Inmate Thomas was able to free himself of his restraints.  The facts do not suggest that inmate separation has ever been a problem or that the procedures in place–securing the inmates at all relevant times with leg chains and handcuffs with a waist chain connected to a leather belt–have even been insufficient to protect any sort of inmates from each other in the courthouse holding cell.  Finally, that Nguyen failed to report to the Deputy that he feared for his safety or that Inmate Thomas had freed himself from his restraints also suggests that the Defendants' policy of non-separation was not the moving force of Nguyen's injuries, and that there were other superceding factors that more directly caused his harm.

Finally, there is no suggestion in the record that there was inadequate training as to handcuff application.  Where the policy in question concerns a failure to train or supervise municipal employees, liability under Section 1983 requires that the omission amount to "deliberate indifference" to a constitutional right.  *See Connick v. Thompson*, 131 S.Ct. 1350, 1359–60 (2011); *see also Doe v. Luzerne Cnty.*, 660 F.3d 169, 179–80 (3d Cir.2011) (*citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  This standard is met when the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can be reasonable said to have been deliberately indifferent to the need.  *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1997).  "In other words, a municipality can only be liable under § 1983 where the failure to train demonstrates a 'deliberate' or 'conscious' choice by the municipality." *Doe*, 660 F.3d at 179. This requires some sort of notice that training is inadequate, and a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (citation omitted); *see also Kelly v. Borough of Carlisle*, 622 F.3d 248, 265 (3d Cir. 2010). "A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities." *Id.* As to the handcuffing, the record reflects that a prisoner's becoming free of his restraints is "extraordinarily unusual under the circumstances" and that all of the "Deputies are properly trained in the use of restraint devices such as department issued handcuffs, prisoner waist chains, leg irons, and plastic loop restraints (flex cuffs)." (Anthony Aff. at ¶¶ 22, 27, Defs.' Ex. A.) There is nothing suggesting that there was any shortcoming in the failure to train and that this unfortunate event was anything more than an accident.

Therefore, the Court finds that Nguyen's Monell claim fails in lacking an underlying constitutional violation as well as a lack of factual support suggesting that the municipality failed to adequately train or implement policies that would create such constitutional violations. As such, summary judgment will also be granted in the Defendants' favor on Nguyen's *Monell* claim.

## **CONCLUSION**

Nguyen has failed to present any facts that the Defendants were aware of the threat they were exposing him to, and therefore fails to establish a violation of his Fourteenth Amendment right to due process under the state-created danger doctrine. As such, his supervisory claim against Defendant Sheriff Dane Anthony and his *Monell* claim against Franklin County must also fail. Magistrate Judge Blewitt's Report and Recommendation

determining the same will be adopted and the Defendants' Motion for Summary Judgment will be granted.  An appropriate order follows.


| | |
|---|---|
| April 20, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |